**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ryan N Clarke,<br>Plaintiff,<br>v.<br>LTM Limited,<br>Defendant. | No. CV-26-07522-PHX-KML<br>**ORDER** |

Plaintiff Ryan N. Clarke is a sergeant in the Arizona National Guard and believes his employer, defendant LTM Limited, took adverse actions against him because of his military service. Clarke filed a complaint, motion for temporary restraining order, and an application for leave to proceed in forma pauperis. (Docs. 1, 2, 4.) The application is granted but the complaint is dismissed with leave to amend because it fails to state a claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii). Clarke's request for a temporary restraining order is denied.

## I. Background

In September 2024, Clarke began working for LTM. (Doc. 1 at 3.) In February 2026, Clarke was assigned to LTM's client "Odyssey Re." (Doc. 1 at 3.) Beginning in March 2026, Clarke "raised concerns" regarding how LTM was treating his absences from work due to military duties. (Doc. 1 at 1.) An attachment to the complaint indicates those concerns included Clarke's manager suggesting he "use PTO rather than LWOP for military service obligations." (Doc. 1-1 at 67.) There are no allegations that Clarke was

required to use PTO for his service obligations; to the contrary, Clarke's complaint and attachments to it suggest he was not required to. (*See* Doc. 1 at 6; Doc. 1-1 at 22, 61.)

In April 2026, Clarke experienced difficulties with LTM's "timekeeping process" regarding his military leave. (Doc. 1 at 5.) Clarke's manager responded that the leave "had not been rejected" and that Clarke's timesheet would be approved. (Doc. 1 at 5.) After April 2026, Clarke continued to experience difficulties with recording his military leave through LTM's timekeeping program. (Doc. 1 at 6.) It does not appear that Clarke's difficulties were solely linked to his military service as he alleges he had problems accurately reporting his time even "on dates that were not drill days." (Doc. 1 at 7.)

On June 18, 2026, Clarke's manager confirmed the dates Clarke would be out for military duty. (Doc. 1 at 4.) On July 28, 2026, Clarke informed LTM there was "an active [Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA")] investigation by the U.S. Department of Labor Veterans' Employment and Training Service (VETS) Division involving LTM concerning prior military leave issues." (Doc. 1-1 at 17.) Three days after Clarke informed LTM of the investigation, Clarke's manager sent an email regarding "deviations from the scheduled . . . shift coverage." (Doc. 1-1 at 29.) That email stated Clarke arrived "almost 1-1.5 hours late" on July 7th and July 8th. (Doc. 1-1 at 29.) Clarke views that email as raising "performance concerns." (Doc. 1 at 12.) Clarke admits he was late on July 8, but he seems to suggest he was scheduled for a different shift on July 7. (Doc. 3 at 4.) There are no allegations that other employees were allowed to arrive late at work without consequences.

On August 27, 2026, VETS closed its investigation of LTM, "finding that the evidence did not support a violation." (Doc. 1 at 8.) On August 31, 2026, Clarke received "a timesheet non-compliance notice" that was inaccurate. (Doc. 1 at 8.) Clarke complained the timekeeping program continued to prevent him from accurately recording his military leave. On September 4, 2026, an LTM employee informed him that his "assignment with Odyssey account will end on Friday, 11 September 2026." (Doc. 1 at 9.)

On September 10, 2026, LTM's "workforce management team" told Clarke he

"would be moved to an 'onsite unallocated bench.'" (Doc. 1 at 10.) If Clarke "was not assigned to a new billable position within two weeks of bench placement [he] would receive two weeks' notice" and terminated. (Doc. 1 at 10.) Clarke was placed on the bench on September 12, 2026, no position was found, and he was told on September 28 that October 13, 2026, would be his last day of work. (Doc. 1 at 10.) It is unclear if Clarke was terminated.

On October 13, 2026, Clarke filed this suit asserting claims for discrimination and retaliation under USERRA. Clarke believes his timekeeping problems, the email regarding performance concerns, and his planned separation were because of his military leave or his earlier complaints about treatment of his military leave. Alongside his complaint, Clarke also filed a motion for temporary restraining order. (Doc. 2.) That motion seeks an order either "preserving [his] employment and salary" or, if he has already been terminated by the time the court can rule, being restored to employment. (Doc. 2 at 14.)

## II. Analysis

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Clarke's USERRA discrimination and retaliation claims require allegations his military "status or conduct was a substantial or motivating factor in" in an adverse employment action. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 (9th Cir. 2002) (simplified). The complaint adequately alleges Clarke's status is protected by USERRA and that he engaged in protected activity when he took time off for military duties and

complained regarding LTM's treatment of his military leave. Although it is not entirely clear which events Clarke believes qualified as adverse employment actions, it is well-established that termination of employment would qualify. Construed in the light most favorable to Clarke, the complaint identifies protected activity and adverse action. The complaint does not, however, contain sufficient allegations linking the protected status or conduct to an adverse employment action (such as his termination).

Discriminatory motivation may be alleged through "a variety of factors, including proximity in time between the employee's [protected activity] and the adverse employment action, inconsistencies between proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Id.* at 900 (simplified). Of these possibilities, Clarke's only allegation is that certain events occurred shortly after his protected activity.

Temporal proximity alone is usually weak evidence of discrimination or retaliation. *See Kama v. Mayorkas*, 107 F.4th 1054, 1060 (9th Cir. 2024). Here, the relevant events happened close together but there are no additional indicia that Clarke has a plausible USERRA claim. Clarke does not allege other individuals were treated differently. Clarke alleges he received an email regarding his late arrivals at work but admits he was late at least one of those days and does not allege other employees were allowed to arrive late without consequence. Similarly, Clarke also does not allege any negative comments regarding his status or conduct. The only comment Clarke references was when his manager suggested he "use PTO rather than LWOP for military service obligations." (Doc. 1-1 at 67.) But Clarke responded he was not required to do so and Clarke was not, in fact, required to use his PTO. Finally, Clarke does not allege that LTM offered inconsistent reasons for how he was treated.

Without allegations beyond temporal proximity that establishes Clarke's military service factored into employment decisions, he "has not nudged [his] claims of invidious

discrimination across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (simplified). The complaint is dismissed with leave to amend. If Clarke wishes to file an amended complaint, the amended complaint must contain an exhibit that indicates how the amended complaint differs from the original, by bracketing or striking through the text to be deleted and underlining the text to be added.

Clarke filed a motion seeking a temporary restraining that would either prevent his termination or, if he has already been terminated, require his reinstatement. Clarke's complaint does not contain sufficient facts supporting a claim for relief and he has not otherwise established a likelihood of success on the merits or that there are serious questions going to the merits.[1] *Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014). Having failed to make the threshold showing for injunctive relief, there is no need to reach the remaining preliminary injunction factors. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

**IT IS ORDERED** the Application (Doc. 4) is **GRANTED**. Plaintiff is responsible for service of the summons and complaint.

**IT IS FURTHER ORDERED** the complaint (Doc. 1) is **DISMISSED**. No later than **November 2, 2026**, plaintiff may file an amended complaint that includes an exhibit indicating how the amended complaint differs from the original. The Clerk of Court shall enter a judgment of dismissal with prejudice if no amended complaint is filed by that date.

**IT IS FURTHER ORDERED** the Motion for Temporary Restraining Order (Doc. 2) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Allow Electronic Filing (Doc. 5) is

---

[1] USERRA identifies four factors a court must consider when determining whether to award equitable relief. 38 U.S.C. § 4323(e). Those provisions are close to "the traditional test that applies to the grant of a preliminary injunction." *Briarcliff Manor Union Free Sch. Dist. v. Heltzel*, No. 25-CV-3031 (KMK), 2026 WL 2294989, at *4 (S.D.N.Y. Aug. 7, 2026). The important difference is that a court cannot "deny a motion for injunctive relief on the basis that a party bringing an action to enforce a provision of this chapter may be awarded wages unearned due to an unlawful termination or denial of employment at the conclusion of such action." 38 U.S.C. § 4323(e)(3). "In other words, the monetary nature of any alleged harm is of no moment." *Briarcliff Manor Union Free Sch. Dist.*, No. 25-CV-3031 (KMK), 2026 WL 2294989, at *4. Because USERRA still requires a "likelihood of success on the merits," the unique limitation regarding monetary harm is immaterial. 38 U.S.C. § 4323(e)(2)(A)(C).

**GRANTED**. Plaintiff shall comply with all rules outlined in the District of Arizona's Case Management/Electronic Case Filing Administrative Policies and Procedures Manual, maintain access to the required equipment and software, maintain a personal electronic mailbox of sufficient capacity to send and receive electronic notice of case related transmissions, be able to electronically transmit documents to the court in .pdf format, register as a subscriber to PACER (Public Access to Electronic Records) within five days of the date of this Order and comply with the privacy policy of the Judicial Conference of the United States and E-Government Act of 2002. Any misuse of the ECF system will result in immediate discontinuation of this privilege and disabling of the password assigned to the party.

Dated this 20th day of October, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**